I see you were appointed under the Criminal Justice Act. We appreciate your willingness to accept the appointment. Thank you, Your Honor. May it please the Court, my name is Charles Hawkins and I represent Mr. Kopecky, the appellant in this case. The issue that presents itself for the Court's consideration this morning is whether the deliberate elicitation of Mr. Kopecky's refusal to consent to a warrantless search requires a new trial based upon denying him a right to a fair trial. The standards are appropriately set forth by both the government and the defense and the first threshold question is whether the remark was improper. I'd submit to the Court it's clearly evident that it was improper. Mr. Shasky never at the time of the objection argued that it was proper.  The government in footnote 8 on pages 20 to 21 of their brief cite to the 5th and the 7th and the 11th circuit assuming they're improper, the 10th circuit saying they may be impermissible, the 3rd and the 9th clearly finding that they are improper, but recognizing that this Court specifically hasn't addressed that issue. In regard to the impropriety, the Court instructed the jury that it was improper and never should have been brought up. The defendant brought a motion for a new trial. The appellant brought a motion for a new trial, which the government did not respond to and did not claim the trial judge was in error in finding that it wasn't proper. And I'd submit to the Court, although it wasn't specifically addressed, I'll candidly tell you, it didn't hit me until this morning that based upon their lack of any objection at any prior time, have waived their right to claim it was not proper. They cite the McNutt case for the proposition that the Fourth Amendment may be alluded to in a context, but it's clearly distinguishable under McNutt in the fact that the defendant in McNutt was arguing that the dope was planted and they were allowed to introduce the evidence of his non-consent to show knowledge to rebut the claim of frame-up by the police. In Harris, they cite to the Court in regard to the Fourth Amendment, but Harris is distinguishable in a number of areas. Particularly, it's in a pretrial investigative setting. They're asking or trying to collect handwriting exemplars. They're talking about the distinction between the Fifth and the Fourth Amendment. But clearly in the quote, they talk about the rights protected under the Fifth Amendment are considerably broader, but the Court also states they are not more important than those protected under the Fourth Amendment. I'd respectfully submit to the Court that eliciting Mr. Kopecky's lack of consent was clearly improper. How about prejudice, though? Especially in light of the curative instruction, number one. And number two, I don't think the government ever asked the jury to reach any inferences or conclusion based on the question and answer. And they never did. But, of course, that's because the judge sustained the objection and already told them you can't do this. Okay. So where's the prejudice? As far as the prejudice goes, this case, if you look at the case, you have very similar, if not almost identical, situation to the Beeks case we cite to the Court. There's no cumulative effect, but Beeks found one was sufficient. So we look at the weight of the evidence. Molly McGuire is confronted by the police in January, denies she knows an individual by the name of Jesus Rodillo, who is the source of methamphetamine that's coming in from Washington at given times, and testifies that Mr. Kopecky is the individual that's providing it. Like Beeks, McGuire and Rodillo end up being transported together. Rodillo's initial statement is, I'm supplying all this dope to McGuire. After they're transported together, after they have the ability to collude, he changes his testimony in an interview with the government, and now instead of Ms. McGuire being the recipient of these pounds and pounds and pounds of methamphetamine, now it's Mr. Kopecky. Now, interestingly, when you talk about the prejudice, one of the things that happened in this case, when the discussions were held about the mistrial, and on 18 in the appellee's brief, the prosecutor specifically says, I guess we could give a curative instruction that they should disregard that. What's he follow it up with? I don't know if it's sufficient. He's the man trying the case. He's called three witnesses that had come in that originally were anticipated to testify they were receiving dope from Kopecky. Every one of them said, either it wasn't true, it never happened, or I lied to the police when I said that. And that wasn't on cross-examination. That was on direct examination. The only specific physical evidence relating to this conspiracy arises out of the consent to search issue. And the reason I'd suggest that there is a statement that says, I don't know if it's sufficient in regard to a curative instruction, is because at the time that this search occurs, it's two hours after Rodeo, Molly McGuire, and Mr. Kopecky are in Devil's Lake at a casino. Mr. Rodeo is there to deliver pounds of cocaine. Mr. Kopecky's vehicle that searched does not have pounds of cocaine, but Ms. McGuire testified, yeah, I saw him just for a moment, but I didn't buy it because it was poor quality. What they find in the search is a quantity of cocaine, approximately an ounce, scales, baggies, and other items. Those items are found in a vehicle that is not Mr. Kopecky's, is not being driven by Mr. Kopecky, but clearly infers that within two hours of these people being found at the Devil's Lake casino, Mr. Kopecky does not consent to a search. After telling them you can find some marijuana in this console, he does not consent to the search that discloses the methamphetamine, the scales, the baggies, and other items. The prejudice to Mr. Kopecky is clear, was recognized by the government in regard to the conversation on the curative instruction, and I respectfully submit to the court that the error, the improper comments, were not harmless beyond a reasonable doubt in the context of this case, and particularly in the comparative analysis that can be done with United States First Beaks. The instruction, the curative instruction that the district court gave was fairly strong. Is there anything that you think the instruction could have said that would have made this harmless? No. Here's why, Your Honor. This is a situation where you get, we cited the Fifth Circuit case, you know, you can't unring the bell, you can't take the skunk out of the jury box, you know, it's one of those things that every one of those jurors remembers when that dope is being talked about, when those scales are being talked about, when those baggies are being talked about, when they are sitting in the jury room in front of them, they're saying, well, that came out of a vehicle Mr. Kopecky was in, and oh, by the way, although they may not say it, he refused to consent after he said there's marijuana in the console. A jury instruction is not going to cure what happened in this case, no matter how strong it is. We are people. We are human beings. We try and do the best we can. But we've learned, and now in our district courts, we're getting into unconscious bias. And when you take that statement, add it to that evidence, you can't beyond a reasonable doubt say it's harmless, that the unconscious bias that was planted by that elicitation of non-consensual or non-consent is harmless beyond a reasonable doubt. Thank you. The court will hear from the government. Good morning. May it please the court? I'm going to lower this a little bit. My name is Brett Shasky. I'm an assistant U.S. attorney in the District of North Dakota, representing the United States today. Not surprisingly, our position on this matter is contrary to that of Mr. Kopecky and Mr. Hawkins. I believe that the record in this case shows that regardless of whether we even address the issue of whether this was proper or improper, we're going to have to move on to the prejudice thing. And the prejudice side of this is where I think their argument fails. Let me ask you, assuming that it was improper, do you bear the burden of showing that it was harmless beyond a reasonable doubt, or does Kopecky bear the burden of showing that he was prejudiced by the question and answer? I believe he has to prove that he was prejudiced by that, Your Honor. And in this case, again, just assuming for argument purposes that we are in a situation where the improper question was asked and we're going to go through the cumulative effect, strength of the evidence, curative instruction analysis, we do have to keep in mind, I think, that the order from Judge Erickson at the district court indicated that this error was, his exact words, I believe, were that it had little potential for prejudicial effect in this case. And he went on and analyzed based on the evidence and so on. But as far as the cumulative effect on this, too, I want to note that there was only basically seven words in a four-day trial. There was a question of did you get consent and then a three-word response of I did not. And I think that's important when you look at the case law that's been cited in our brief, such as Figueroa and Hernandez, where a single remark over the course of a number of days does not necessarily prejudice the defendant and the cumulative effect of it is minimal. In this case, I would also note, and this is something, again, that I just picked up on in reviewing a little bit here, that if we look in this case at the actual testimony from the transcript on page 409 and 410 where this objection and so on came from, when the question was, the deputy had reviewed his report and we started to go on what happened after that, and that's when he responded basically indicating that he had both of them in the backseat of his vehicle and I asked for consent to search the vehicle at that point. The follow-up question was did you get consent? And then he said I did not, at which point the objection occurred. When we got up to sidebar with the judge at that point, my question was basically asking because he had asked for consent to search the car, because Mr. Hawkins had referenced that he was moving for a mistrial based upon the exercise of Mr. Kopecky's constitutional right to remain free from search and seizure. So I said because he asked for consent. His response, no, because he refused. If you look at the actual words in the testimony, it's not even clear, and I'm not making a point that I know what was going to happen or what inferences can be made, but at no point does the deputy say I asked Mr. Kopecky for consent, nor did I say did Mr. Kopecky consent to the search. His name was not referenced at that point, and we knew prior to that that Mr. Kopecky was a passenger in this vehicle. The vehicle was registered to his cousin, Donnie Foss, and his girlfriend, Tanya Lorge, was the driver of the vehicle. To make an inference from that that Mr. Kopecky is the one who was responding or refusing consent, that's a question that's really not answered. It's hanging out there. So to simply draw the conclusion that his rights were violated because of those rather vague responses, I think is maybe a step too far from the defense. Moving on from that, though, Your Honor, he relies heavily on beaks in this case, and in that case it was a very methodical approach that the assistant U.S. attorney, I believe it was, had gone through in an attempt to establish kind of in a backdoor way a prior conviction of the defendant as well as that he lied to an employer. And worse than that was the fact that there was a pretrial order in place from the court indicating don't do that. Don't bring that criminal history up until you have permission. Is it your view that a single question could not be sufficient to cause sufficient prejudice? No, it can be. I would agree with that, Your Honor. I'm just saying in the facts of this particular case, I don't believe that it was such a prejudicial thing to do that. What about your counterpart's argument that this case depended a lot on cooperator kind of testimony that shifted and that anything that the jury might get from or infer from the defendant himself would carry significant weight to ultimately decide who to believe and who not to? I don't believe that, well, in every case that we have, I've prosecuted hundreds and hundreds of drug cases, and we almost always have people changing stories from one time to another in interviews, okay? That happens. The fact that in this case they did that does not surprise me. They're under oath. The jury gets to decide which version of their statements to believe. Both of them are brought out on direct and cross-exam, so they're fully aware that the story's changed. I don't know that the scales were tipped by one question where it's not even clear who actually is the one who refused consent. And I do note also, Your Honor, that one thing Mr. Capecchi argues in his brief at page 20 of it, he's talking about where the deputy's answer painted Mr. Capecchi as a liar about all of this stuff and that that is like the, I think he went on it and indicated in there, too, that this was kind of the straw that broke the camel's back and so on. And in reality, if that question painted Mr. Capecchi as a liar, I would suggest that had virtually zero impact on what the jury thought of him because page 407, 408 of the transcript, the deputy's testimony, is where he's talking about how Mr. Capecchi flat out lied about his identity to the deputy at the beginning of the traffic stop. So if we're going to hang our hat, as Mr. Capecchi's brief seems to argue, on the fact that it painted him as a liar, he did that himself prior to that when he lied to the deputy. So again, I don't think that the balance was shifted in any way as a result of that one question. I don't think it broke the camel's back. I don't think it created the indestructible house of bricks versus the house of sticks that Mr. Hawkins has argued. I think that the evidence actually was strong in this case. But what is your position on whether it was error or are you asking us just to jump over that? I'm saying that the court can jump over that. I think even in looking at the district court's order, I think the district court has kind of indicated in there that it was error to do so, to make that or ask that question. But then the court went on and analyzed the same way with the prejudice probe. So you're not disputing the district court's conclusion there? I'm not conceding it, but I'm not going to dispute it here, Your Honor, because I don't think we need to get to that is what I'm getting at. I think it's something that certainly could go either way. It's not as clear cut, in my opinion, as what the defense would argue about this, based upon my analysis of how the wording of the questions came in and so on. I think the case, I think it's also a Fifth Circuit case that was cited in our brief, that it may be impermissible to draw inferences from a defendant's refusal to consent if it's not a fair response to a defense claim, and that's a Tenth Circuit decision. But I think that idea behind that is that it's not something that we want to have a per se rule, that you said it, it's improper and it's reversible. I think you have to look behind that at the facts and circumstances surrounding that alleged improper comment. And here, I think if you look at the improper balance there, it's, again, not as clear cut as they would say based on the way the testimony came in. And again, I think the curative instruction that was given was strong. I think it's interesting that Mr. Capecchi's argument is, at one point, that it's so strong and good that it's showing that it's improper. But then on the other hand, it's a waste of the court's breath and it's meaningless to make that instruction to the jury. But I think that it was as strong as one could get and was appropriate. And I am out of time, so I thank you for your time. I would ask that the court affirm the lower court's decision. Thank you. I'd just like to comment on Mr. Capecchi's credibility. He says Mr. Capecchi proved he was a liar. He initially told the police officer his name was Donald Voss. It's in our facts. He corrected that. He explained that the reason he lied about who he was was because he didn't want to get arrested, because there was a warrant out for his arrest.  This incident relating to the only physical evidence that there was, everything else is cooperator testimony or circumstantial evidence, is that drugs that came out after it was elicited that he didn't consent to it. They brought a dog out. They alerted. They searched the vehicle. They found this information. Thank you, counsel. The court appreciates your arguments and briefing. The case will be submitted and decided in due course.